# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Jin Ackerman, | Case No.: 2:24-cv-00935-JAD-DJA |
| Plaintiff | **Order Screening Complaint and Granting Limited Leave to Amend by January 24, 2025** |
| v. | |
| Curtis Rigney, et al., | [ECF No. 1-1] |
| Defendants | |

Plaintiff Jin Ackerman brings this civil-rights action under 42 U.S.C. § 1983, claiming that his constitutional rights were violated when staff at Ely State Prison (ESP) seized wires from a medical pain-management device during a search of his cell. Because Ackerman applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A. I find that he has pled colorable claims for deliberate indifference to serious medical needs against three defendants but has otherwise failed to state a claim. I dismiss the insufficiently pled claims and grant Ackerman leave to amend to attempt to replead his property-deprivation claim and the remainder of his deliberate-indifference-to-serious-medical-needs claim. Any amended complaint is due by January 24, 2025.

## Background

**A.    Ackerman's factual allegations[2]**

Ackerman has chronic back pain. He received an ADA accommodation to manage this pain using a medical device called a TENS unit. In June 2023, Lieutenant (Lt.) Curtis Rigney and Correctional Officer (CO) T. Phelps searched Ackerman's cell and confiscated wires from

---

[1] ECF No. 1.

[2] This is a summary of allegations, not a section of factual findings.

his TENS unit.[3]  Ackerman protested, telling Rigney about his ADA accommodation and offering to show Rigney the approval forms.  Ackerman also explained that an inoperable TENS unit would make it harder for him to perform daily life activities like sleeping.  Rigney took the wires anyway, telling Ackerman to dispute the seizure.  Rigney also told Phelps to give Ackerman an Unauthorized Property Form, but Phelps didn't do that.[4]

About a week later, Ackerman filed a grievance challenging the seizure.  An unnamed ADA Coordinator denied it because it did not include an Unauthorized Property Form (even though Ackerman said in the grievance that he was not given that form).  Ackerman soon re-filed the grievance and received a response from Lt. Rigney.  Rigney stated that medical had already issued replacement wires, but that wasn't true.  Neither Rigney nor Associate Warden (AW) David Drummond forwarded the grievance to medical, even though they both knew that Ackerman had an ADA accommodation for the TENS unit.[5]

In August 2023, Ackerman filed a first-level grievance with an attached medical kite showing that the wires for his TENS unit still had not been replaced.  Warden William Gittere agreed with the resolution to that point, stating that the issue was "being handled" and adding that the confiscated wires were broken (without saying why he thought that).[6]

In September 2023, Ackerman filed a second-level grievance.  K. Shea, the Deputy Director for the Nevada Department of Corrections (NDOC), responded by pointing to Gittere's statement that the issue was "being handled."  Shea also stated that Ackerman couldn't prove

---

[3] They also confiscated Ackerman's beard trimmer and damaged boxes in his cell, but because Ackerman's claims focus on the TENS unit, it's unnecessary to mention those issues any further.

[4] ECF No. 1-1 at 2–4.

[5] *Id.* at 3–4.

[6] *Id.* at 4–5.

anything in his grievance, including the claim that he wasn't given an Unauthorized Property Form when the wires were confiscated in June 2023.  It was not until October or November 2023 that Ackerman finally got replacement wires, and that was without help from prison officials.[7]

**B.    Ackerman's claims**

Ackerman sues Lt. Rigney, CO Phelps, Warden Gittere, AW Drummond, and Deputy Director Shea.  He brings an Eighth Amendment claim for deliberate indifference to serious medical needs.  He also checked a box for "property" to identify the issue involved in this lawsuit, which I liberally construe as an attempt to bring a claim based on the seizure of his property.  Because the Fourth Amendment's prohibition on unreasonable seizures doesn't apply in a prison cell,[8] I consider this claim under the Fourteenth Amendment.

**Discussion**

**A.    Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[9]  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[10]  All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact.  This includes claims based on legal conclusions that are untenable, like claims against defendants who

---

[7] *Id*. at 5.

[8] *See Hudson v. Palmer*, 468 U.S. 517, 528 n.8 (1984).

[9] 28 U.S.C. § 1915A(a).

[10] *Id*. § 1915A(b)(1)(2).

3

are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[11]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[12]  In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[13]  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[14] but a plaintiff must provide more than mere labels and conclusions.[15]  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[16]  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[17]

**B.    Analysis of claims**

**1.    *Ackerman states a colorable Eighth Amendment claim.***

The Eighth Amendment gives prisoners the right to be free from deliberate indifference to serious medical needs.[18]  To establish a violation of this right, "a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual

---

[11] *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[12] *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[13] *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[14] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[17] *Id.*

[18] *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).

1  punishment—and a subjective standard—deliberate indifference."[19]  An objectively serious

2  medical need is one that, left untreated, "could result in further significant injury or the

3  unnecessary and wanton infliction of pain."[20]  And deliberate indifference is shown by "(a) a

4  purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm

5  caused by the indifference."[21]  "Indifference may appear when prison officials deny, delay or

6  intentionally interfere with medical treatment, or it may be shown by the way in which prison

7  physicians provide medical care."[22]

8         I find that Ackerman states colorable claims for deliberate indifference to serious medical

9  needs against three out of five defendants.  Ackerman's alleged back pain satisfies the objective

10 prong because it is chronic and requires ongoing treatment with a pain-management device.[23]

11 And Ackerman satisfies the subjective prong for Lt. Rigney by alleging that Rigney took the

12 wires for Ackerman's TENS unit *after* Ackerman told Rigney that (1) the device was approved

13 and (2) the device was necessary to treat his back pain.[24]  Rigney also allegedly responded to a

14 subsequent grievance by failing to forward it to medical and falsely stating that replacement

15 wires had been issued.  So this claim may proceed against Lt. Rigney.

16

17

18 [19] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014)).

19 [20] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

   [21] *Id*. (internal quotations omitted).

20 [22] *Id*. (internal quotations omitted).

21 [23] *See Peralta*, 744 F.3d at 1086 ("The existence of chronic and substantial pain indicates that a prisoner's medical needs are serious." (cleaned up)).

22 [24] *See Hamilton v. Endell*, 981 F.2d 1062, 1066–67 (9th Cir. 1992), *abrogated in part on other grounds by Estate of Ford v. Ramirez–Palmer*, 301 F.3d 1043, 1045 (9th Cir. 2002) (holding that prison officials are deliberately indifferent if they "deliberately ignore[] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner").

23

Ackerman also satisfies the subjective prong for Warden Gittere and Deputy Director Shea. A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant."[25] A supervisor is liable for a subordinate's constitutional violations "if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983."[26] Here, Ackerman alleges that Gittere and Shea personally knew of his need for a working TENS unit through the grievance process, yet they failed to address that need by responding that the issue was "being handled" and doing nothing. According to Ackerman, Gittere responded in August and Shea responded in September, but he didn't get replacement wires until October or November—and even then, "that was done without help from the Defendants."[27] At the screening stage, that is enough for this claim to proceed against Gittere and Shea.[28]

With respect to CO Phelps, however, Ackerman does not allege any *knowing* disregard of his serious medical needs. Ackerman alleges that Phelps was part of the team that confiscated the wires for his TENS unit, but it's not reasonable to infer that Phelps knew what those wires did because Ackerman allegedly explained their utility to Lt. Rigney—not Phelps.[29] Ackerman does allege that Phelps failed to give him an Unauthorized Property Form after taking the wires, which Ackerman claims was against the prison's policy on confiscation of property, but failing

---

[25] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[26] *Id*.

[27] ECF No. 1-1 at 5.

[28] *See Snow*, 681 F.3d at 989 (holding that wardens were aware of inmate's medical need from reviewing orders and grievances); *Jett*, 439 F.3d at 1098 (holding that administrators informed of alleged constitutional violation through inmate's letters may be liable for failing to remedy it).

[29] *See* ECF No. 1-1 at 3 ("I called Rigney back to my cell to ask for the items back."); *id*. at 4 ("All of this was explained to Rigney when he took my device's wires.").

to follow policy is not the same as being deliberately indifferent to medical needs.[30]  So I dismiss this claim as to CO Phelps, but because it does not yet appear that Ackerman cannot allege additional facts to state a colorable claim against him, I grant Ackerman leave to amend his complaint to cure this deficiency.

The same outcome applies for AW Drummond.  Ackerman alleges that Drummond knew about his ADA accommodation for the TENS unit and failed to forward his June 2023 grievance to medical.  But Ackerman does not explain what role, if any, Drummond actually played in the grievance process.  If Ackerman meant to imply that Drummond was the ADA Coordinator who denied the June 2023 grievance, then Ackerman should have alleged that clearly.  As it stands, Ackerman must allege more facts to show how Drummond was personally involved in the grievance process or otherwise responsible for providing Ackerman treatment for his chronic back pain.  So I dismiss this claim against Drummond with leave to amend.

### 2.    Ackerman fails to state a colorable Fourteenth Amendment claim.

The Fourteenth Amendment's Due Process Clause allows a prisoner to bring a claim for deprivation of property when the deprivation is authorized and intentional, but not when (1) the deprivation is unauthorized and (2) there is a meaningful post-deprivation remedy available.[31]  A deprivation is authorized when it is carried out through established state procedures, regulations, or statutes.[32]  However, allegations that a deprivation occurred "as a result of the unauthorized failure of agents of the State to follow established state [or prison] procedure"

---

[30] *Peralta*, 744 F.3d at 1087 ("[F]ailure to follow [prison] procedures isn't, of itself, enough to establish a violation of . . . constitutional rights." (citations omitted)).

[31] *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985).

[32] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982).

do not state a due-process violation.[33]

I find that Ackerman fails to state a colorable property-deprivation claim based on the confiscation of the wires for his TENS unit. Ackerman alleges that Lt. Rigney seized the wires during a cell search, told CO Phelps to give Ackerman an Unauthorized Property Form, and said Ackerman would need to dispute the seizure. If the allegations stopped there, the deprivation might rightly be considered one authorized by prison procedures on contraband property. But the allegations don't stop there—Ackerman also alleges that he was allowed to have the wires in his cell as a result of an ADA accommodation for his TENS unit and that he offered to show Rigney the approval forms for the device before Rigney took the wires. These allegations take the deprivation from one that was potentially authorized to one that was not.

The State of Nevada provides Ackerman a meaningful post-deprivation remedy for such an unauthorized deprivation. That remedy is a state-court tort action[34] that follows the procedures established for an NDOC prisoner to recover compensation based on an NDOC employee's loss or damage of property.[35] Because Ackerman alleges an unauthorized deprivation with an available post-deprivation remedy, this claim must be dismissed. Although it appears unlikely that Ackerman could ever allege a viable due process claim based on these allegations, in an abundance of caution I grant him an opportunity to amend this claim, too.

---

[33] *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 329–31 (1986) (concluding that negligence by a state official is not enough to state a claim under the Fourth Amendment).

[34] *See* Nev. Rev. Stat. § 41.031 (waiving sovereign immunity from liability and consenting to suit in state court for tort actions).

[35] *See id*. § 41.0322 (setting forth guidelines for actions by persons in NDOC custody to recover compensation for loss or injury).

**C.    Leave to amend**

It appears that Ackerman could cure the deficiencies of his Eighth Amendment claim for deliberate indifference to serious medical needs against CO Phelps and AW Drummond.  It also appears that Ackerman may be able to cure the deficiencies of his property-deprivation claim under the Due Process Clause of the Fourteenth Amendment.  So I grant Ackerman leave to amend to attempt to replead these claims.

If Ackerman chooses to file an amended complaint, he is advised that an amended complaint supersedes (replaces) the original complaint, so the amended complaint must be complete in itself.[36]  This means that Ackerman's amended complaint must contain all claims, defendants, and factual allegations that he wants to pursue in this lawsuit, including the claims that I allowed to proceed in this order.  He must file the amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Ackerman must follow the instructions on the form.  He need not and should not allege very many facts in the "nature of the case" section of the form.  Rather, in each count, he should allege facts sufficient to show what each defendant did to violate his civil rights.  **Ackerman must file the amended complaint by January 24, 2025**.

**Conclusion**

IT IS THEREFORE ORDERED that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to:

---

[36] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("The fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original."); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

9

- **FILE** the complaint (ECF No. 1-1); and

- **SEND** Ackerman the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his original complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that:

- the **Eighth Amendment claims for deliberate indifference to serious medical needs against CO T. Phelps and AW David Drummond are DISMISSED** with leave to amend by January 24, 2025;

- the **property-deprivation claim under the Fourteenth Amendment's Due Process Clause is DISMISSED** with leave to amend by January 24, 2025;

- the **Eighth Amendment claims for deliberate indifference to serous medical needs MAY PROCEED against Lt. Curtis Rigney, Warden William Gittere, and Deputy Director K. Shea**; and

- Defendants **Phelps and Drummond are DISMISSED from the complaint without prejudice**.

If Ackerman chooses to file an amended complaint, he must use the approved form and he shall write the words "First Amended" above the words "Civil Rights Complaint" in the caption.  The amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>.  If Ackerman does not file an amended complaint by January 24, 2025, this action will proceed immediately on the Eighth Amendment claims for deliberate indifference to serious medical needs against Lt. Rigney, Warden Gittere, and Deputy Director Shea only.**

Dated: December 10, 2024

_____
U.S. District Judge

10